UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| BONNIE P. MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 15-002-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Bonnie P. Morgan ("Morgan" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 10, 14] Morgan argues that the administrative law judge ("ALJ") assigned to her case erred by finding that she is not entitled to a period of disability and disability insurance benefits. [Record No. 10] She requests reversal of the Commissioner's final decision and an award of those benefits. *Id.* The Commissioner asserts that the ALJ's decision is supported by substantial evidence and should be affirmed. [Record No. 14] For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief requested by Morgan.

## I.

On September 22, 2010, Morgan filed her first application under Title II of the Social Security Act ("the Act") for a period of disability and disability insurance benefits.

[Administrative Transcript "Tr.," p. 206-243]   On April 27, 2011, Morgan's claim was denied.  [Tr. 97]  On October 12, 2011, Morgan again filed for a period of disability and disability insurance benefits on the same basis but this time with the assistance of an attorney.  [Tr. 244-278]  Her claim was denied a second time on April 10, 2012.  [Tr. 110]  That denial was affirmed upon reconsideration.  [Tr. 122]

Morgan, along with her attorney Gregory T. Hughes and vocational expert ("VE") Howard L. Caston, appeared before ALJ Ena Weathers on July 8, 2013 for an administrative hearing.  [Tr. 44-85]  On September 18, 2013, the ALJ found that Morgan was not disabled under sections 216(i) and 223(d) of the Act.  42 U.S.C. §§ 416(i), 423(d).  [Tr. 37]  Morgan appealed that decision to the Social Security Administration's Appeals Council.  However, the Appeals Council denied her request for review on October 31, 2014.  [Tr. 1-6]

Morgan alleges that her disability began on July 8, 2009, when she sustained a back injury while lifting a five-gallon bucket of paint at her workplace.  [Tr. 60-61, 273]  At the time of her alleged injury, Morgan was forty-seven years old.  [Tr. 35, 49]  Morgan also claims to suffer from depression, anxiety, PTSD, nerve damage, uterine problems, neck pain, and cardiac problems. [Tr. 57, 70, 210, 248]  Morgan testified during the administrative hearing that she has a tenth grade education and is capable of reading and writing.  [Tr. 51]  Before the onset of her alleged disability, Morgan worked as an industrial cleaner, a cheese cutter, and a food delivery person, all of which the ALJ classified as unskilled work.  [Tr. 36]

After considering the testimony at the administrative hearing and reviewing the record, the ALJ concluded that Morgan had not engaged in substantial gainful activity since the onset of her alleged disability and that she suffers from the following severe impairments:

-2-

degenerative disc disease of the lumbar spine with spondylosis; obesity; major depressive disorder; and an anxiety disorder.  [Tr. 23]  However, the ALJ concluded that none of Morgan's severe impairments met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart B, Appendix I.  [Tr. 25]  The ALJ also determined that Morgan retained the residual functional capacity ("RFC") to perform a full range of light work subject to the following limitations:

> The claimant is unable to climb ladders, ropes, or scaffolds.  The claimant is limited to no more than occasional stooping, kneeling, crouching, and crawling, while the claimant can frequently climb ramps and stairs.  The claimant is limited to no more than occasional overhead reaching on her left, while she can perform frequent handling and feeling with her left (dominant) upper extremity.  The claimant can perform unlimited overhead reaching, handling, and feeling with her right upper extremity.  The claimant must avoid concentrated exposure to temperature extremes, vibration, and hazard, including commercial driving and work at unprotected heights.  The claimant is limited to simple, routine tasks and no more than occasional interaction with the general public.

[Tr. 27-28]

After considering Morgan's age, education, work experience, and RFC, the ALJ concluded that a significant number of jobs exist in the national economy that she could perform, including folder/stacker, marker/labeler, and school bus monitor.  [Tr. 36]  As a result, the ALJ determined that the Claimant  was not disabled from July 8, 2009, through the date of the decision.  [Tr. 37]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity,' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).   A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"   *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).   If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.   *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application.   20 C.F.R. § 404.1520(b).   Second, the claimant must show that she suffers from a severe impairment or combination of impairments.   20 C.F.R. § 404.1520(c).   Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience.   20 C.F.R. § 404.1520(d).   Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of disability based on medical evaluations and current work activity, the Commissioner will then review the claimant's RFC and relevant past work to determine whether she can perform his past work.   If she can, she is not disabled.   20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether she can perform other work.   If she cannot perform other work, the Commissioner will find the claimant disabled.   20 C.F.R. § 404.1520(g).   "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work

-4-

available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

The substantial evidence standard presupposes that a zone of choice exists within which decision makers can go either way, without interference from the court.  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).  If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  In other words, the Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

## III.

Morgan contends that errors made by the ALJ in her analysis of the applicable listings warrant reversal.  [Record No. 10, pp. 2-3]  Additionally, she asserts that the ALJ's RFC

-5-

finding is not supported by substantial evidence. *Id.* at 3-6. Finally, she argues that the ALJ

erred by determining that she could perform work in the national economy. *Id.* at 4, 6-9.

## A.    Listed Impairments

At step three of the sequential analysis, the ALJ must determine whether a claimant's

severe impairment meets or medically equals a listed impairment in Appendix I of 20 C.F.R.

Section 404. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the claimant's impairment meets

or medically equals one of the listed impairments, the ALJ must find the claimant disabled,

and the analysis ends there. *Id.*

### 1.    Incomplete analysis of Sections 1.02 and 1.04 of the Listings

Morgan first asserts that an incomplete sentence in the ALJ's step three analysis

deprived her of a decision made "on the record." [Record No. 10, p. 2-3] Morgan is correct

that the ALJ's analysis of the Listings seems to be incomplete. At the beginning of her step

three analysis, the ALJ states that she intends to address Listings 1.02, 1.04, 12.04, and

12.06. [Tr. 26] The next paragraph begins,

> The evidence shows that the claimant does not meet or equal the criteria set
> out in Listing 1.02 (major dysfunction of a joint). Listing-level severity in this
> instance requires a showing that the claimant has involvement of one major
> peripheral weight-bearing joint resulting in an inability to ambulate effectively
> as defined in 1.00(B)(2)(b) or involvement of one major peripheral joint in
> each upper extremity resulting in an inability to use fine and gross movements
> effectively as define [sic] in 1.00(B)(2)(c). The weight of the objective
> evidence, discussed in much greater detail in the

*Id*. The paragraph ends there mid-sentence. In the following paragraph, the ALJ conducts  a

thorough analysis of Listings 12.04 and 12.06, without returning to support her conclusion

regarding Listing 1.02. *Id.* The ALJ fails to address Listing 1.04 altogether.

-6-

In her motion for summary judgment, Morgan does not cite any authority supporting reversal for a decision made "off the record."  However, the Social Security Administration's regulations do require the ALJ to "issue a written decision that gives the findings of fact and the reasons for the decision."  20 C.F.R. § 404.953(a).  Generally, "agencies are bound to follow their own regulations."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).  Nevertheless, the United States Court of Appeals for the Sixth Circuit has held that "an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983).  In other words, an agency's failure to follow its own regulations will be reviewed for harmless error.

In *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011), and *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359 (6th Cir. 2014), the Sixth Circuit applied the harmless error standard to facts nearly identical to this case.  After concluding that the claimant's impairments did not meet or medically equal sections 1.00 or 12.00 of the Listings, the ALJ in *Reynolds* went on to explain his findings regarding section 12.00 but neglected to further address section 1.00.  424 F. App'x at 415.  Finding that the evidence Reynolds put forth might possibly have met a listing under section 1.00, the Sixth Circuit concluded that the ALJ's error was not harmless.  *Id.* at 416.  Without a reasoned explanation, the *Reynolds* Court found it "impossible to say that the ALJ's decision at Step Three was supported by substantial evidence."  *Id.*

-7-

In *Forrest*, the ALJ concluded without further explanation that the record did not contain evidence showing that the claimant met the requirements for any listing.   591 F. App'x at 364.   Unlike *Reynolds*, the *Forrest* Court found that the ALJ's cursory step three analysis did constitute harmless error because the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusion."   *Id.* at 366.   The Sixth Circuit distinguished *Reynolds* because the ALJ in that case failed to give any reason explaining why the claimant's impairment did not meet the listing in question.

Even though the ALJ in this case failed to analyze Listings 1.02 and 1.04 in her step three analysis, like *Forrest*, certain factual findings in other parts of the decision render the ALJ's mistake at step three harmless.   Listing 1.02, captioned "Major Dysfunction of a Joint" requires either "inability to ambulate effectively" or "inability to perform fine and gross movements effectively" with both arms.   20 C.F.R. pt. 404, subpt. P., app. 1, § 1.02.   In assessing the claimant's credibility at step four of the analysis, the ALJ observed that in spite of Morgan's complaints to the contrary, numerous clinical exams documented normal ambulation and full strength in all four of Morgan's extremities. [Tr. 29-30]   The ALJ's conclusions are fully supported by Morgan's medical records.   [*See* Tr. 326, 329-334 (Emergency department records from two separate visits by Morgan to St. Elizabeth Hospital showing "normal gait," "normal ambulation," and "5/5 strength x4 extremities.")]

To meet Listing 1.04, a claimant must exhibit a spinal disorder with (A) evidence of nerve root compression or (B) spinal arachnoiditis or (C) lumbar spinal stenosis.   20 C.F.R. pt. 404, subpt. P., app. 1, § 1.04.   In her step four analysis, the ALJ emphasized that the Claimant's complaints were inconsistent with the mild findings from the radiology studies.

-8-

[Tr. 29]  The ALJ made specific reference regarding the results of Morgan's August 2009 MRI scan.  *Id.*  According to the ALJ, the MRI results "explicitly documented" the absence of any nerve root compression or stenosis.  *Id.*  The radiology report, attached as an exhibit to the decision, confirms the ALJ's findings.  [Tr. 475]  Further, the radiology report makes no mention of arachnoiditis.  *Id.*  The factual findings made by the ALJ after her step three analysis demonstrate that, unlike *Reynolds*, Morgan did not present evidence that suggests even the possibility of success at step three.  Therefore, the ALJ's error in failing to analyze Listings 1.02 and 1.04 was harmless and does not warrant reversal of the ALJ's decision.

### 2.      Claimant's ability to use public transportation

Morgan also argues that several facts relied on by the ALJ were unsupported by the record, entitling her to a reversal of the ALJ's findings.  [Record No. 10, pp. 3-4]  One of the disputed facts appears in the ALJ's step three analysis of Listings 12.04 and 12.06. Both listings require the ALJ to consider whether the Claimant's impairments have resulted in "marked restriction of daily living."  20 C.F.R. pt. 404, subpt. P., app. 1, §§ 12.04, 12.06.  In evaluating Morgan's activities of daily living, the ALJ observed,

> The claimant nevertheless acknowledged that she cleans up around her residence, goes grocery shopping, prepares her own meals, does the dishes, checks the mail, uses public transportation, drives, and performs her personal [sic] with some assistance due to reported physical limitations.

[Tr. 26]  Morgan finds fault with this statement on the basis that "there was no testimony about nor exhibits reflecting the ability of Claimant to **utilize public transportation**." [Record. No. 10, p. 3]

As discussed above, generally an administrative agency's decisions are reviewed for harmless error. *Connor*, 721 F.2d at 1056. However, this Court need not apply the harmless error standard because the ALJ's statement regarding Morgan's use of public transportation is supported by the record. In Morgan's first application for disability insurance in September of 2010, Morgan filled out a "Function Report," attached as Exhibit 5E to the ALJ's decision. In response to the question, "When going out, how do you travel? (*Check all that apply*)," Morgan checked the blanks next to "Ride in a car" and "Use public transportation." [Tr. 230] Thus, the ALJ did not commit error by relying on Morgan's own statements about her activities of daily living.

## B.       Residual Functional Capacity

Residual functional capacity is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC determination is a matter reserved for the ALJ. *See* 20 C.F.R. § 416.946(c). In making this determination, the ALJ considers the medical evidence, non-medical evidence, and the claimant's credibility. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010). An ALJ's RFC finding will be upheld where it is supported by substantial evidence. 42 U.S.C. § 405(g).

The Claimant asserts that the ALJ failed to properly evaluate her RFC. [Record No. 10, pp. 3-6] Specifically, Morgan claims that the ALJ erred by: (i) finding that she testified "while in no obvious distress" and that she "can walk one and a half blocks," (ii) failing to give proper weight to the opinion of her treating physician, Dr. Shearer, and (iii) according

improper weight to the opinions of all consultative examiners and State agency reviewers. *Id.* Morgan asserts that these alleged errors resulted in the ALJ's incorrect finding that she had the RFC to perform a full range of light work. *Id.*

### 1.   Factual disputes

Morgan contends that the ALJ also made incorrect factual findings in the RFC analysis that entitle her to a reversal. [Record No. 10, p. 3-4]   First, Morgan takes issue with the ALJ's observation, made during her assessment of Morgan's credibility, that Morgan testified "while in no obvious distress." *Id.* at 3.   Morgan contends the ALJ's statement is false because the transcript of the administrative hearing proves that her discomfort during the hearing required her to stand for part of her testimony. *Id.*

The Sixth Circuit held in *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) that the task of evaluating the credibility of witnesses, including the credibility of the claimant, belongs to the ALJ, not to the reviewing court.   However, the *Rogers* Court also concluded that an ALJ's credibility determinations "must find support in the record." *Id.* The regulations do provide the ALJ with the authority to "consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements."   SSR 96-7p, 1996 WL 374186, at *5.

Having reviewed the transcript of the administrative hearing, this Court will give deference to the ALJ's findings regarding Morgan's credibility because her conclusions are supported by the record.   The context of the ALJ's statements about Morgan's demeanor during her testimony is key.   The decision states:

> Witnessing the claimant testify about her alleged pain level also contributes to a finding that her complaints are exaggerated and not entirely credible. At the hearing, the claimant testified that her pain level was ten out of ten despite the undersigned's plain explanation that this level of pain is of a severity that it would require immediate emergency medical attention. Yet the claimant **made this statement while in no obvious distress**, slowly and calmly continuing her testimony about her reported medical conditions.

[Tr. 31] (emphasis added) This episode, where the ALJ asked Morgan to rate her pain level and Morgan responded that her pain level was a ten out of ten, occurs at page fifty-six of the administrative hearing transcript. Morgan asked to stand at page sixty, over twenty-two questions after the pain level question. While Morgan might have experienced discomfort later in the administrative hearing, the ALJ did not err by noting that Morgan testified without apparent discomfort at a completely different point during the hearing.

Morgan also disagrees with the ALJ's finding that she "can walk one and a half blocks." [Record No. 10, p. 3] According to Morgan, she actually testified that one and a half blocks was the longest she had walked in the last six months. *Id.* Morgan contends that the ALJ should have relied on her testimony that she "can only walk six feet before needing to rest." *Id.* Once more, the record expressly refutes Morgan's argument. In fact, the ALJ mentions both statements in evaluating Morgan's credibility. The ALJ begins by observing that Morgan "cannot walk more than six feet before needing to rest for up to 30 minutes." [Tr. 28] In the following paragraph, the ALJ states that Morgan also reports "that the farthest she can walk is one and a half blocks. [Tr. 28] Accordingly, Morgan is not entitled to reversal of the final administrative decision based on either factual dispute.

-12-

## 2.     Treating physician

Generally, the ALJ gives the treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record. 20 C.F.R. § 404.1527(c)(2).  However, when a treating physician offers an opinion on an issue reserved to the Commissioner, "the ALJ need not accord the opinion controlling weight." *Kidd. v. Comm'r of Soc. Sec.*, 283 F. App'x. 336, 341 (6th Cir. 2008).  The regulations also provide that a physician's opinion regarding whether a claimant is unable to work or disabled is given no "special significance." 20 C.F.R. § 404.1527(d)(1).   The ALJ determines the appropriate weight to give to a treating physician's medical opinion by considering: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any other factors which tend to support or contradict the opinion.  20 C.F.R. § 416.927(c)(2)-(6).

Additionally, an "ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 509 (6th Cir. 2006) (per curiam) (quoting *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)).  "Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is 'not inconsistent' with the other substantial evidence in the case record."  S.S.R. 96-2p, 1996 WL 374188, at *1 (July 2, 1996).

Morgan asserts that the ALJ did not give the proper weight to the opinion of her treating physician, Dr. Gary Shearer.  [Record No. 10, p. 4]  However, she offers no evidence to contradict the ALJ's detailed findings that led her to give Dr. Shearer's opinion "little weight."  In accordance with the regulations and governing case law, the ALJ refused to rely on Dr. Shearer's reports that Morgan was "permanently and totally disabled."  [Tr. 33]  The ALJ explained that the issue of disability is reserved for the Commissioner of the Social Security Administration and that Dr. Shearer's disability determination was "highly inconsistent with the objective evidence from every other medical source in the record, which has noted mild radiological and clinical exam findings."  *Id.*  The ALJ also expressed concern that Dr. Shearer's typed treatment notes and handwritten exam notes, attached as exhibits to the ALJ's decision, seemed inconsistent.  [Tr. 33]

At the beginning of the administrative hearing, Morgan's attorney, Gregory Hughes, stated on the record that at some point, Dr. Shearer had converted his practice from family medicine to a pain clinic.  [Tr. 46]  Hughes explained to the ALJ that not all of Dr. Shearer's records were available because his practice was shut down by the F.B.I. and his patient records seized during an investigation.  *Id.*

When weighing the opinion of a claimant's treating physician, the ALJ should consider the five specific factors listed in 20 C.F.R. § 416.927 as well as any other factors "which tend to support or contradict the opinion."  20 C.F.R. § 416.927(c)(6).  The ALJ reasonably concluded that the investigation of Dr. Shearer's practice was another factor weighing against the reliability of his medical opinion.  [Tr. 33]  In light of the inconsistencies in Dr. Shearer's own records, the inconsistency of his opinion with the other

medical records, the conclusory and unsupported nature of his opinions, and the F.B.I.'s ongoing investigation, the ALJ did not err by attributing little weight to Dr. Shearer's medical opinions.

### 3.  Consultative examiners and State agency reviewers

Morgan also alleges that the ALJ gave too little weight to all of the medical opinions, including the opinions of consultative examiners' [CE] and State agency reviewers.  [Record No. 10, p. 4-6]  The ALJ must weigh all medical opinions, including the opinions of non-examining sources, by considering the relevant factors in 20 C.F.R. § 416.927(c)(2)–(6).  20 C.F.R. § 404.1527(e).  Findings of fact made by State agency reviewing physicians are treated as expert opinion evidence of non-examining sources.  S.S.R. 96-6p.  1996 WL 374180, at *1 (July 2, 1996).  They can only be accorded weight "insofar as they are supported by evidence in the case record." *Id.*

Morgan primarily criticizes the ALJ's analysis of the medical opinions on the basis that "the decision finds credibility only when the opinions do not support disability." [Record No. 10, p. 5]  According to Morgan, "It appears that the decision writer came to a conclusion as to disability and then witness by witness found pieces of the opinions not credible where such opinions supported a finding of disability." *Id.* at 5-6.  But Morgan's argument is incorrect.

The ALJ's decision reveals a thorough analysis of each medical opinion, measured against the other evidence offered.  Consistent with the supportability and consistency requirements in 20 C.F.R. § 404.1527, the ALJ attributed less weight to the opinions of physicians who heavily relied on Morgan's subjective statements, even when those

-15-

statements contradicted their own objective findings or the other objective evidence in the record.

The ALJ gave partial weight to the opinions of state agency examiners Dr. Saranga and Dr. Beign because their opinions were,

> generally consistent with the mild radiological findings, the rather mild findings on each of the clinical exams by physicians other than Dr. Shearer, the claimant's extremely conservative course of medical care, and the fact that the claimant has acknowledged participating in a wide range of activities of daily living.

[Tr. 33]  She gave "little weight" to the opinions of consultative examiners Dr. Stegman and Dr. Kershnerbecause their reports were based almost entirely on Morgan's subjective complaints but were unsupported by the findings from their own physical examinations of Morgan, attached to their reports. *Id.* at 33-34.  Again, the ALJ emphasized that these reports were not supported by the radiology records, the objective findings of other physicians, and Morgan's conservative course of treatment. *Id.*

The ALJ decided that the report of consultative psychologist Dr. Rosenthal was entitled to "some weight[,] given that he is the only medical source on record to conduct an objective examination of the claimant's psychological functioning." *Id.* at 34.  The assessment provided by Dr. Brooks-Warren, the reviewing State agency psychiatrist, was accorded "significant weight" because her findings were consistent with Dr. Rosenthal's report and with Morgan's self-reporting regarding paragraph B criteria. *Id.* at 34-35. Finally, and perhaps most damning to Morgan's argument that the ALJ only gave weight to opinions finding against disability, the ALJ accorded "limited weight" to the opinions of state agency reviewing psychologists Laboy and Brake. *Id.* at 35.  Laboy and Brake

-16-

ultimately concluded that Morgan did not have any "medically determinable psychological impairment." *Id.* Even though their findings were generally consistent with the Claimant's treatment records, the ALJ gave them less weight because "there is evidence available showing the claimant has medically determinable psychological impairments." *Id.* In short, the ALJ's analysis of the medical opinions offered by non-treating sources is well-reasoned, supported by the record, and consistent with the regulations governing evaluation of opinion evidence.

### C.      Availability of Jobs in the National Economy

At the fifth step of the analysis, the ALJ considers the claimant's RFC from step four along with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(g)(1). If the ALJ determines that there is substantial evidence that the claimant is able to engage in "substantial gainful work which exists in the national economy," the ALJ must find the claimant not disabled. 42 U.S.C. § 423(d)(2)(A). *See also Varley v. Sec. of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The testimony of a vocational expert ("VE"), including the VE's answers to hypothetical questions that "accurately portray [the claimant's] individual physical and mental impairments," may be relied upon by the ALJ as substantial evidence. *See Varley*, 820 F.2d at 779.

### 1.      Morgan's education level

The Claimant first challenges the ALJ's factual finding that she has at least a high school education. [Record No. 10, p. 4] Morgan contends that she only finished the tenth grade. *Id.* The record does indicate that Morgan did not complete high school. Morgan

testified to that effect at her hearing [Tr. 51], and her October 2011 application for disability benefits indicates that she only completed the tenth grade.  [Tr. 249]

Nevertheless, the ALJ's error regarding Morgan's education level was harmless.  The VE testified that someone with the Claimant's impairments and work experience could work as a folder (1991 WL 673072, *DOT* no. 369.687-018), a marker (1991 WL 687992, *DOT* no. 920.687-126), or a school bus monitor (1991 WL 673102, *DOT* no. 372.667-042).  The *Dictionary of Occupational Titles* ("*DOT*") assigns a Specific Vocational Preparation ("SVP") level of two to all of those jobs.  *Id.*  Jobs with an SVP level of one or two are considered unskilled work, and unskilled work is appropriate for a person with a limited education.  *See* SSR 00-4p, 2000 WL 1898704, at *3.  *See also* 20 C.F.R. 404.1564(b)(3). Persons with a seventh to eleventh grade education are classified as having a "limited education."  *Id.*  *See also Pompos v. Comm'r of Soc. Sec.*, No. 3:12-cv-2276, 2014 WL 1154247, at *2-3 (N.D. Ohio, Mar. 21, 2014) (Where the claimant only finished tenth grade, the ALJ's finding that he finished high school was harmless because the ALJ adopted the VE's testimony that the claimant should be limited to unskilled work.).

Morgan's tenth grade education should not hinder her from performing any of the jobs recommended by the VE and adopted by the ALJ in her decision.

### 2.    Medical-Vocational Guidelines

Morgan also contends that the ALJ applied sections of the Medical-Vocational Guidelines at step five that conflict with her RFC determination at step four.  According to Morgan's cross-motion for summary judgment, "[t]he decision states that 'Section 204.00…provides a framework for decision making.'"  [Record No. 10, p. 6]  Morgan

-18-

observes that Section 204.00 of the Medical-Vocational Guidelines is the standard for heavy work, not light work. *Id.* She also contends that, "[t]he decision acknowledges Claimant cannot perform a 'full range' of light work but then applies Medical Vocational Rules 202.13 and 202.20." *Id.* Morgan argues that Sections 202.13 and 202.20 are also inappropriate based on her age at the time of the onset of her alleged disability. *Id.* at 8.

Again, however, Morgan selectively quotes from the ALJ's decision without acknowledging the broader context of the ALJ's statements. The only reference to Section 204.00 in the ALJ's opinion appears in the ALJ's explanation of the Guidelines. Further, the plain language of the ALJ's decision reveals that she did not apply Section 204.00, 202.13, *or* 202.20. The decision states,

> When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the medical-vocational rules are used as a framework for decision making unless there is a rule that directs a conclusion of 'disabled' without considering the additional exertional and/or non-exertional limitations (SSRs 83-12 and 83-14). If the claimant has solely non-exertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision making (SSR 85-15).

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.20 and Rule 202.13. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.

[Tr. 36]

After acknowledging that the Medical-Vocational Guidelines do not cover Morgan's specific situation, the ALJ goes on to state that she relied on the VE's testimony instead. *Id.* Even though the ALJ mentions certain provisions of the Medical-Vocational Guidelines, her

decision clearly demonstrates that she did not apply any of those provisions.  Thus, Morgan's arguments regarding the Guidelines are without merit.

### 3.    VE's testimony

Finally, Morgan contends that the jobs recommended for her by the VE do not fit the RFC assigned by the ALJ.  [Record No. 10, p. 6]  Because the *DOT* lists the "strength level" of all three of the jobs chosen by the VE as "light work," Morgan argues that those occupations are inconsistent with her RFC.  *Id.* at 7.  While the ALJ did find that certain physical limitations impede Morgan's ability to perform a full range of light work, those limitations do not affect the strength level category.  The ALJ concluded that Morgan cannot climb ladders, ropes, or scaffolds; that she can only occasionally stoop, kneel, crouch, crawl, and reach overhead on her left side; and that she should avoid exposure to temperature extremes, vibration, and hazard.  [Tr. 27]  However, the ALJ did not place any restrictions on Morgan's ability to stand for certain lengths of time or lift certain amounts of weight.  The strength requirements for each of the three jobs are based entirely on the claimant's ability to stand a significant amount of time or exert so many pounds of force.  *See* folder, *DOT* no. 369.687-018; marker, *DOT* no. 920.687-126; school bus monitor, *DOT* no. 372.667-042. Additionally, the jobs listed by the VE are conducive to the actual physical limitations the ALJ found impeded Morgan's ability to perform light work.  *Id.*

Morgan also calls attention to the fact that the *DOT* assigns a "Reasoning Level" of two to all three jobs, which requires the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions."  [Record No. 10, p. 7] Morgan argues that this conflicts with the ALJ's finding that she is "limited to simple,

routine tasks." *Id.* While the ALJ may take advisory notice regarding job information in the *DOT*, the ALJ is not required to do so. *Conn v. Sec. of Health and Human Servs.*, 51 F. 3d 607, 610 (6th Cir. 1995). Thus, the ALJ may also "accept testimony of a vocational expert that is different from information in the *Dictionary of Occupational Titles*." *Id.* The Sixth Circuit addressed the issue raised by Morgan in *Monateri v. Comm. of Soc. Sec.*, 436 F. App'x. 434, 446 (6th Cir. 2011).

Like Morgan, the claimant in *Monateri* cited "no authority for the proposition that jobs requiring reasoning levels two or three are inconsistent as a matter of law with a limitation of simple work." *Id.* The *Monateri* Court ultimately refused to find error simply because the claimant alleged that the jobs chosen by the VE did not precisely match the *DOT*'s descriptions. *Id.* The same reasoning applies here. The minor discrepancies alleged by Morgan between the *DOT* and Morgan's RFC do not warrant a reversal or a remand of the ALJ's decision. The ALJ is not bound by every detail in the *DOT*'s descriptions.

Morgan also complains that the school bus monitor job might involve "more than occasional interaction with the general public" (i.e., the last limitation the ALJ placed on Morgan's ability to perform light work). [Record No. 10, p. 8] While the *DOT* does note that a school bus monitor involves "dealing with people," it does not specify to what degree a school bus monitor must interact with the public. 1991 WL 673102, *DOT* no. 372.667-042. Regardless, the reasoning from the Sixth Circuit's decision in *Conn* applies here as well. The ALJ was not bound by the specific description in the *DOT*. Substantial evidence supports the ALJ's determination that Morgan is able to engage in substantial gainful employment available in the national economy.

-21-

## IV.

The ALJ did not err in finding that the Claimant did not meet a listed impairment. Nor did she err in considering: (i) the opinions of treating and non-treating sources; (ii) the Medical-Vocational Guidelines; and (iii) the VE's testimony. The flaws identified in the ALJ's factual findings were harmless and the ALJ's determination of Morgan's RFC is supported by substantial evidence. Further, the ALJ properly determined that Morgan can perform at least three occupations in the national economy.

Substantial evidence supports the final decision of the Commissioner. Accordingly, it is hereby

**ORDERED** as follows:

1.      Plaintiff Bonnie P. Morgan's Motion for Summary Judgment [Record No. 10] is **DENIED**.

2.      Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 14] is **GRANTED**.

3.      The decision of Administrative Law Judge Ena Weathers will be **AFFIRMED** by separate Judgment entered this date.

This 21st day of September, 2015.



**Signed By:**

*Danny C. Reeves*

**United States District Judge**